UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **HITACHI CAPITAL AMERICA CORP** | **CIVIL ACTION NO. 3:18-CV-00599** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **D M S HEALTHCARE INC., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

Pending before the Court is a Motion for Summary Judgment filed by Plaintiff Hitachi Capital America Corp. F/N/A Creekridge Capital LLC ("Hitachi") [Doc. No. 23]. Hitachi contends this is a straightforward collection matter in which it seeks to enforce the clear and unambiguous terms of the contracts at issue. Hitachi asserts that it is entitled as a matter of law to judgment against Defendants DMS Healthcare, Inc. ("DMS") and John D. Jones ("Jones") (collectively "Defendants") for all amounts due as a result of Defendants' alleged defaults under the contracts. Defendants oppose the motion, contending that the contractual provisions are ambiguous as to when Defendants' obligation to make payments ceases.

For the following reasons, Plaintiff's Motion for Summary Judgment [Doc. No. 23] is GRANTED.

**I.     FACTS AND PROCEDURAL BACKGROUND**

This case centers on the claims of Hitachi seeking to enforce a Master Software Agreement (the "Agreement") and related documents executed by DMS and its affiliates United Home Care, Inc. ("United") and Trinity Home Health Care, Inc. ("Trinity"), and by Jones, as a guarantor, on April 29, 2015. The Agreement was part of a license/lease transaction whereby DMS, United,

and Trinity were granted the right to use certain healthcare management software (the "Software") as part of their home health care services.[1] The Agreement set a term of sixty months (5 years) starting on the first day of the month following DMS's acceptance of all the Software. The current term of the Agreement runs through October of 2020.

United, Trinity, and DMS were "Users" under the Agreement. Hitachi was the "Provider." Jones executed a personal guaranty (the "Guaranty") of the obligations of DMS under the Agreement.

The Agreement provided for 6 monthly rent payments of $5,000.00 (plus applicable taxes), 6 monthly rent payments of $10,000.00 (plus applicable taxes), and 48 monthly rent payments of $15,033.00 (plus applicable taxes). The Agreement further provides that, if a default occurs, Hitachi is entitled to, among other things, require DMS to immediately pay all sums already due under the Agreement plus all other sums becoming due (including an acceleration of remaining payments). The nonpayment by DMS of any monthly payment within 10 days of its due date constitutes a default under the Agreement.

On May 2, 2018, Hitachi filed this lawsuit, alleging that Defendants DMS, Trinity, and United had committed a default under the Agreement by failing to pay the monthly rent payments, interim rent payments and other charges due under the Agreement. Hitachi filed an Amended and Restated Complaint on July 5, 2018, naming Jones as an additional Defendant.

Hitachi alleges that the monthly payments due for February 2018 and all months thereafter have not been paid. Hitachi contends that it is owed $572,913.36 under the terms of the

---

[1] Hitachi also named as defendants United and Trinity. However, those two defendants have filed petitions pursuant to the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Louisiana [Cause of Action Nos. 18-31053 and 2018-11484]. As a result of these filings, and the automatic stay arising therein, Hitachi's motion does not address the claims asserted against them.

Agreement, broken down as follows:

| | |
|---|---:|
| Past-due amounts (February 2018 – December 2018): | $165,363.00 |
| Tax on past-due amounts: | $18,173.43 |
| Late fees: | $41,340.75 |
| Accelerated amounts (January 2019 – October 2020): | $315,393.00 |
| Tax on accelerated amounts: | $32,643.18 |
| **Total Due (not including attorney's fees and costs)** | **$572,913.36[2]** |

On December 12, 2018, Hitachi filed this Motion for Summary Judgment [Doc. No. 23], in which it moves for judgment as a matter of law against DMS and Jones for the above amounts. Hitachi asserts summary judgment is appropriate because the Agreement and the Guaranty are clear and unambiguous, and no genuine issue as to any material fact remains.

On January 8, 2019, Defendants filed an Opposition [Doc. No. 25], in which they contend that Hitachi is not entitled to summary judgment because there is an open question of fact as to when, or if, DMS is obligated to make payments under the Agreement. Hitachi filed its Reply to Defendants' Opposition on January 15, 2019 [Doc. No. 26]. The matter is ripe.

## II. LAW AND ANALYSIS

### A. Summary Judgment

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

---

[2] The total figures in Hitachi's Memorandum in Support of its Motion for Summary Judgment add up to $540,270.18, not $572,913.36 [Doc. No. 23-1, p. 4]. However, the Affidavit of Scott R. Loeffel, offered in support of the Motion for Summary Judgment, establishes that the Memorandum inadvertently failed to list the $32,643.18 claimed by Hitachi for "Tax on Accelerated Amounts" [Doc. No. 23-2, p. 2]. Therefore, the Total Due amount should be $572,913.36.

CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Entitlement to Summary Judgment

Defendants' opposition to Hitachi's motion for summary judgment is based solely on a provision in the Agreement which states:

> END OF TERM AND RENEWAL: Provider must receive notice from User in writing, certified mail requested, at least 120 days prior to the expiration of the Initial Term or any Renewal Period of a Schedule, of User's intention to discontinue use of the Software or to exercise the purchase option indicated in the Schedule. **User's obligation to pay Payments will continue until the use of the Software is discontinued.** Unless notice is received by Provider. this Agreement will automatically renew for an additional term of 12 months (a "Renewal Period") under the same terms and conditions on each Schedule. Such notice may only be given if User is not currently in Default.

[Doc. No. 23-2, p 5]. (Emphasis added).

Defendants assert, but produce no summary judgment evidence to show, that by March of

2018, DMS, United, and Trinity had completely shut down all operations and discharged all their patients, due to employee mismanagement and embezzlement. Defendants interpret the above provision to mean that they were only obligated to make "Payments" under the Agreement for the periods of time when they, or any of them, were actually "using" the Software. Thus, since none of them "used" the Software after March of 2018, Defendants conclude that DMS's obligation to make payments ended as of that date. Additionally, they contend Jones cannot be liable on the Guaranty, as any obligation arising thereunder is only a secondary obligation, dependent on the validity and amount of the primary obligation.

Defendants assert the above conclusion is based on a "clear reading" of the Agreement. Alternatively, they argue that should the Court have any uncertainty about the impact of this clear language, then that ambiguity requires the denial of the motion. They contend that the Agreement is inconsistent in that, while it clearly states that the User is only obligated to pay when the Software remains in use, it also includes other provisions which are directly inconsistent with that provision. For example, the "Provider's Remedies" provision, to the extent it attempts to allow for an acceleration of any remaining payments, it does so without any mention of the "User" using the Software. This inconsistency, Defendants argue, requires that the Agreement be deemed ambiguous, and, since the Agreement was completely drafted by Hitachi[3], all ambiguities should be construed against Hitachi. Thus, they conclude, Hitachi is not entitled to judgment as a matter of law.

Hitachi responds that the "use of the Software" sentence in located in a paragraph governing the end of the Term of the Master Agreement, and, when properly read in the context

---

3 Again, Defendants present no summary judgment evidence to support their assertion that the Agreement was completely drafted by Hitachi.

5

of its paragraph, this sentence simply requires Defendants to continue making payments if they continue using the Software after the end of the Term. Hitachi argues, further, that when read in context, the Master Agreement clearly and unambiguously requires that Defendants make continuous monthly payments during the entire Term, regardless of whether the Defendants use the Software during that time.

The Court agrees with Hitachi. The Master Agreement provides that it will be governed by and interpreted according to the laws of the State of Minnesota [Doc. No. 23-2, p. 6]. Under Minnesota law, contract terms must be read "in the context of the entire contract" and should not be construed "so as to lead to a harsh and absurd result." *Brookfield Trade Ctr., Inc. v. City of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). A contract must be interpreted "in such a way as to give meaning to all of its provisions." *Id*. Moreover, under Minnesota law, a contract is only ambiguous when the language used is "reasonably susceptible of more than one meaning." *Blattner v. Forster*, 322 N.W.2d 319, 321(Minn. 1982). A contract is not ambiguous "solely because the parties dispute the proper interpretation of the terms." *Knudsen v. Transp. Leasing/Contract, Inc*., 672 N.W.2d 221, 223 (Minn. Ct. App. 2003); *see Boat Dealers' Alliance, Inc. v. Outboard Marine Corp*., 182 F.3d 619, 621 (8th Cir. 1999) (stating that divergent interpretations of a contract do not create an ambiguity under Minnesota law). Where a contract is unambiguous, its "language must be given its plain and ordinary meaning," *Bank Midwest v. Lipetzky*, 674 N.W.2d 176, 179 (Minn. 2004).

The Master Agreement unambiguously requires that Defendants make monthly payments during its entire Term. The paragraph titled "TERM" defines the Term of the Master Agreement:

> TERM: The Agreement term will commence on the first day of the month following Provider's receipt of written and/or verbal acceptance for all the

6

> Software (the "Commencement Date") and will continue for the number of months specified on any Schedule (the "Initial Term") and for any successive Renewal Periods. There shall also be an interim term ("Interim Term") beginning on the earlier of (1) the date any advance monies are released by Provider or on the date of User's written and/or verbal acceptance and continuing through the Commencement Date. The Interim Term and the Initial Term are collectively referred to as the "Term."

[Doc. No. 23-2, Ex. A.] Thus, "Term" is comprised of two components: the "Interim Term" – addressing the period prior to and up until the "Commencement Date," and the "Initial Term" – addressing the period after the Commencement Date. [Id.] As set forth on Schedule No. 001, the "Initial Term" of the Master Agreement lasts for a total of 60 months from the Commencement Date, or until October of 2020. [Doc. No. 23-2, Ex. B; Doc. No. 23-2 at ¶ 8.]

The Master Agreement requires that Defendants make payments in accordance with the Term and the payment schedule outlined on Schedule No. 001. [Doc. No. 23-2, Ex. A.] It states:

> PAYMENTS: User agrees to make payments in accordance with the Term and payment schedule outlined on any Schedule ("Payments").

[Doc. No. 23-2, Ex. A.] In other words, under the Master Agreement and Schedule No. 001, Defendants are obligated to make monthly rent payments throughout the entire Term of the Agreement; i.e., through October 2020. This payment obligation is unambiguous and unequivocal. In fact, the Master Agreement reiterates Defendants' payment obligation, by setting forth separately in capital letters: "USER'S OBLIGATION TO PAY PAYMENTS AND ALL OTHER OBLIGATIONS HEREIN ARE ABSOLUTE AND UNCONDITIONAL...." *Id*.

The "use of the Software" sentence is located in a paragraph governing the end of the Term of the Master agreement. When read in the context of its paragraph, this sentence simply requires Defendants to continue making payments if they continue using the Software after the end of the

Term. Reading the sentence in the context of the entire Master Agreement and its "TERM," "PAYMENTS," and "END OF TERM AND RENEWAL" paragraphs, the agreement requires Defendants to make monthly payments both: (1) during the Term, regardless of whether the Defendants use the Software during that time, and (2) after the Term for as long as Defendants continue to use the Software. This interpretation properly gives meaning to all of the provisions of the Master Agreement.

Defendants admit that they signed the contracts and that they have not made payments since February 2018. Further, they have presented no summary judgment evidence to support their contention that they had stopped "using" the Software by March 2018. They do not dispute Hitachi's calculation of damages.

Therefore, the unambiguous contracts, along with the undisputed facts, establish that as a matter of law, Defendants have breached the contracts and owe Hitachi the amount of $572,913.36, plus interest, costs, and attorneys' fees. In addition, in the Guaranty, Jones absolutely and unconditionally guaranteed the payment of all amounts due under the Master Agreement and Schedule No. 001. [Doc. No. 23-3 at ¶ 4; Doc. No. 25-1 at ¶ 4.]

## III. CONCLUSION

For the foregoing reasons, Hitachi's Motion for Summary Judgment [Doc. No. 23] is GRANTED. Hitachi is entitled to summary judgment against Defendants DMS and Jones for the amounts due as a result of their defaults under the contracts that are the basis of this suit, namely the amount of $572,913.36, plus interest, court costs, and attorneys' fees to be submitted upon the granting of this motion.

MONROE, LOUISIANA, this 16th day of January, 2019.

                                      **TERRY A. DOUGHTY**
                                      **UNITED STATES DISTRICT JUDGE**